280 N.J. Super. 457 (1995)
655 A.2d 954
ATLANTIC EMPLOYERS INSURANCE COMPANY AND INSURANCE COMPANY OF NORTH AMERICA, PLAINTIFFS-APPELLANTS,
v.
CHARTWELL MANOR SCHOOL, TERENCE LYNCH, S.R., AND M.R., DEFENDANTS-RESPONDENTS, AND R.M., K.Y., T.F., P.F., B.F., C.K., S.K., R.K., R.S., AND M.M., DEFENDANTS. S.R. AND M.R., PLAINTIFFS-RESPONDENTS,
v.
TERENCE LYNCH AND CHARTWELL MANOR SCHOOL, DEFENDANTS-THIRD PARTY PLAINTIFFS-RESPONDENTS,
v.
CIGNA INSURANCE COMPANY, THIRD PARTY DEFENDANT-APPELLANT, AND FARMERS MUTUAL INSURANCE COMPANY, THIRD PARTY DEFENDANT-FOURTH PARTY PLAINTIFF,
v.
THE HARTFORD INSURANCE COMPANY, FOURTH PARTY DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued February 14, 1995.
Decided March 30, 1995.
*459 Before Judges DREIER, VILLANUEVA and WEFING.
Donald T. Okner argued the cause for appellants Atlantic Employers Insurance Company, Insurance Company of North America and Cigna Insurance Company (Dwyer, Connell & Lisbona, attorneys; Mr. Okner, on the brief).
Stephen S. Weinstein argued the cause for respondents Chartwell Manor School and Terence Lynch (Peter N. Gilbreth, on the brief).
*460 Brian W. Mason argued the cause for respondents S.R. and M.R. (Lorber, Schneider, Nuzzi, Vichness & Bilinkas, attorneys; Mr. Mason and George L. Schneider, on the brief, Charles S. Lorber, of counsel).
The opinion of the court was delivered by DREIER, P.J.A.D.
Plaintiffs, insurance companies, appeal by leave granted from an interlocutory order denying summary judgment and directing plaintiffs to defend the insureds under a reservation of rights and later litigate the issue of whether there was liability coverage. The insureds were a private boarding school and its founder who was also headmaster and a teacher. The insurance policy included an exclusion for intentional acts but provided coverage for corporal punishment under an endorsement.
Multiple suits were commenced against the insureds after the headmaster pled guilty to criminal charges that included various acts of endangerment and sexual assault on a number of male students. In this consolidated tort action, S.R. and his parent and guardian, M.R., seek damages against defendants Terence Lynch and Chartwell Manor School for physical and psychological injuries caused by an alleged pattern of repeated sexual abuse, unauthorized practice of medicine and corporal punishment by Lynch, individually, and exercising his authority as a teacher and headmaster of Chartwell. At least eight personal injury cases were filed by other Chartwell students against Lynch and Chartwell. Plaintiffs filed motions for partial summary judgment in cases involving the other personal injury cases against Lynch and Chartwell.[1] The insurers here sought a declaration that it owed no duty to Lynch to "indemnify or afford coverage for any *461 damages" for claims asserted by S.R. and M.R. They moved for summary judgment declaring that they have no duty to defend because there was no coverage for intentional sexual assaults.[2]
Chartwell was an incorporated for-profit boarding school located in Mendham, New Jersey. The school enrolled students with special educational needs. From February 1980 to May 1983, S.R., then at the ages of eleven to fourteen, attended the school.
Plaintiffs issued an "institutional package" insurance policy to Chartwell. The policy liability coverage section stated that a claim would be paid for an "occurrence" that is covered under the policy. An "occurrence" is defined as an accident that was "neither expected nor intended by the insured."[3]
The policy also contained an endorsement extending coverage to include the administration of corporal punishment. Corporal punishment is defined in the policy as "striking a student with a paddle, stick or hand or using any physical force against a student." The endorsement was subject to the coverage limit for "each occurrence." The policy also stated that "[i]f any claim or lawsuit is brought for harm covered under YOUR LIABILITY COVERAGE, we will defend it."
In his deposition, S.R. set forth a number of incidents of Lynch's sexual and disciplinary actions towards him and others. The discipline was often conducted in the presence of the other students, with the female students excused from the room. S.R. recounted one incident which occurred in Lynch's office when he was told to take his pants off:

*462 I would take the underwear off. Then he would grab me, put his hands on my private area, bend me over his knee, then he would spank me in that fashion.
........
He was serious, you know. He was  as soon as you walked in to the office, he was  you knew he meant business. You were there to be disciplined.
S.R. also stated in his deposition that on another occasion Lynch had tried to stick his finger in his anus during a shower, and at another time he was told to go into Lynch's office and achieve an erection, Lynch indicating that he would be in the office in a few minutes. S.R. did not follow Lynch's instructions.
In May 1986, Terence Lynch was indicted on 109 counts, including multiple charges of sexual assault, endangering the welfare of children, aggravated sexual assault, aggravated criminal sexual contact, and one count of criminal sexual contact. On September 19, 1989, he pled guilty to seventeen of the counts. In reference to S.R., Lynch pled guilty only to count 15, violation of N.J.S.A. 2C:24-4(a), endangering the welfare of a child, and admitted holding S.R.'s genitals while paddling him. However, he claimed that it was his practice to hold the bare genitals to protect the children from injury from the paddle. Lynch claimed that he did many of the acts against the students to "humiliate or degrade" them (see N.J.S.A. 2C:14-1d), not for sexual gratification.
The complaint of S.R. and his mother, M.R., includes the following causes of action: unlawful sexual abuse, unlawful practice of medicine, corporal punishment, assault, battery, child abuse, infliction of emotional distress, breach of contract, outrageous tortious conduct, breach of fiduciary duty/negligence, and negligent supervision. Count I included allegations of "`spankings' both with various instruments and with bare hands" while the boy was naked, which caused physical and psychological harm.
Plaintiffs claimed in their motion that the case was purely one of sexual assault and barred by the policy and State law. Defendants, however, asserted that there were many claims "specifically drafted in terms of corporal punishment" and that Lynch's actions could, at least in part, be considered discipline. Plaintiffs' motion *463 was denied because the issues raised had been previously decided in the cases involving other students and the "law of the case" rule applied. The judge stated:
I think the motion had been decided twice before and it would be inappropriate for me now to decide differently.
Even though we may have a different plaintiff and the facts may be slightly different, the same arguments are being made and I don't think that I'm in a position where I can change the decisions that have been previously made.
He concluded that the other cases presented the "same arguments with respect to coverage." There were also factual issues to be resolved about whether there was a policy and what coverage was included.

I
Intentional acts of the insured are normally not covered by insurance policies as a matter of public policy. However, in Malanga v. Manufacturers Casualty Ins. Co., 28 N.J. 220, 225, 146 A.2d 105 (1958), the Court held that an insurance policy covered assault and battery "`unless committed by or at the direction of the insured.'" One partner of a construction firm did, in that case, commit an intentional assault and battery. The court stated the general rule. "The reason the insurance policy denies coverage of an assault and battery committed by or at the direction of an insured is that it would be contrary to public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing." Ibid. There, the individual partner who committed the tort was not covered by the policy although the partnership was covered. Id. at 230, 146 A.2d 105.
There have been some other occasions when the courts have allowed coverage of intentional acts. For example, in Ambassador Ins. Co. v. Montes, 76 N.J. 477, 388 A.2d 603 (1978), the Court allowed coverage for an intentional act of arson, but there, there was no exclusion of coverage for intentional acts, and there was no definition of "occurrence," limiting it to an accident.
In this case, the policy definition of "occurrence" clearly excluded coverage for intentional acts. "Occurrence" is defined as *464 an "accident" that results in damage or injury that was "neither expected nor intended by the insured." While corporal punishment, usually considered an intentional act, was not included in the basic policy, a corporal punishment endorsement was issued. The insurers claim that this rider incorporated the full definition of "occurrence" used in the body of the policy. We agree, but, as is explained later, this incorporation does not provide plaintiffs with the exoneration they seek.
Plaintiffs claim that they had no duty to defend Lynch or Chartwell because the alleged acts were sexual and therefore intentional. This claim assumes too much. The holding of S.R.'s genitals need not have been a sexual act if, as urged by Lynch, the action was merely to protect the boy from harm to his genitals during a paddling. The resulting alleged harm of a sexual nature could thus have been an unintended consequence of the corporal punishment. As was noted in Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992):
We adhere to the prevalent New Jersey rule and hold that the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury. If not, then the resulting injury is "accidental," even if the act that caused the injury was intentional.
[Id. at 183, 607 A.2d 1255.]
The duty of an insurer to defend its insured is defined by the policy and the allegations of the complaint. In Voorhees v. Preferred Mut. Ins. Co., supra, a homeowner sued her insurer for breach of its duty to defend under the general liability coverage. A teacher had brought suit claiming that the homeowner had caused emotional distress with companion physical symptoms that the homeowner then claimed should have been covered under the insurance coverage for bodily injury. Id. at 169-171, 607 A.2d 1255. The policy required that the injury be caused by an occurrence, meaning an accident and thus excluded intentional acts. Id. at 171, 607 A.2d 1255. The Court stated: "`The duty to defend comes into being when the complaint states a claim constituting a risk insured against.'" Id. at 173, 607 A.2d 1255 (quoting Danek v. Hommer, 28 N.J. Super. 68, 77, 100 A.2d 198 (App.Div. *465 1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954)). The allegations in the complaint and the language in the policy are compared, and if they coincide, there is a duty to defend, regardless of the actual merit of the claims. Ibid. The duty to defend clause is enforceable if there is a "potentially-coverable occurrence" that would be indemnified if proved valid. Id. at 180, 607 A.2d 1255.
Even when the claim is ambiguous, doubts are
resolved in favor of the insured and thus in favor of coverage. When multiple alternative causes of action are stated, the duty to defend will continue until every covered claim is eliminated.
........
That the claims are poorly developed and almost sure to fail is irrelevant to the insurance company's initial duty to defend.
[Id. at 173-74, 607 A.2d 1255 (citations omitted).]
The policy must be interpreted to meet the "objectively-reasonable expectations" of the insured. Id. at 175, 607 A.2d 1255.
In determining if an action by the insured is intentional and thus not covered by the policy, the actor's subjective intent will be examined even if certain actions are "foolhardy" or "reckless." Id. at 184, 607 A.2d 1255. Certain cases, however, are so egregious that an alleged benign subjective intent is not to be believed. For example, recognizing that the sexual assault of children in Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., Inc., 239 N.J. Super. 276, 571 A.2d 300 (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990) was especially egregious, the Court in Voorhees stated: "When the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry into the actor's subjective intent to injure." Id. at 184, 607 A.2d 1255. Unless there are such "exceptional circumstances," the court should look to the subjective intent of the actor. Id. at 185, 607 A.2d 1255. Therefore, if there is a reasonable possibility that the alleged acts by Lynch were other than sexual, the trier of fact would have to *466 examine his subjective intent. This was recognized by the motion judge.
Lynch pled guilty to endangering the welfare of S.R. This was not a sexual assault charge although it encompassed what might be considered acts of a sexual nature. The injured plaintiff would not be estopped from pursuing a claim under the policy and establishing lack of the intent required by the policy. Prudential Property and Casualty Ins. Co. v. Kollar, 243 N.J. Super. 150, 154-55, 578 A.2d 1238 (App.Div. 1990) (insurer had duty to defend even though insured had pled guilty to arson). Thus the admission of Lynch's plea bargain would not affect his right to establish his lack of subjective intent to harm S.R. sexually.
Plaintiffs rely on Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., Inc., supra, which was also an action for declaratory judgment by an insurer, for the proposition that an objective standard must be applied to Lynch's acts because they were sexual in nature and therefore intentional. In Tots and Toddlers, the insurer claimed that it did not have to provide a defense or indemnify the insured operators of a day care center who had allegedly abused various children sexually. 239 N.J. Super. at 278-79, 571 A.2d 300. There we relied on cases from other jurisdictions in which an intention to cause injury was inferred from the sexual abuse of children as a matter of law. Id. at 282-83, 571 A.2d 300 (and cases there cited). We concluded that in such a case an objective test was the better policy. "A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion." Id. at 283, 571 A.2d 300.
If we accept the insurers' premise that the touching of S.R.'s genitals was a sexual act, then the Tots and Toddlers rationale would have merit. But, given Lynch's explanation, we see no more than a question of fact on this point. With an open factual issue, we must fall back on the Voorhees subjective test.
As is noted in Part II of this opinion, the policy excluded intentional acts through its definition of "occurrence," but it *467 included coverage for the acts described in the corporal punishment endorsement. Even if that endorsement is not read to cover intentional acts, the unexpected results of a spanking or paddling would be covered. Thus the inclusion of the "occurrence" element does not preclude recovery. According to Lynch, S.R.'s psychological problems, allegedly caused by any sexual aspects of Lynch's act, were unintended. This interpretation is supported by Lynch's claim that his acts were discipline generally used to humiliate and degrade the students. Even S.R., in his deposition, said that Lynch was serious and treated the act as a punishment. There are also other claims in the complaint that are clearly not sexual abuse.
In the insurers' reply brief, they argue that the nonsexual acts were not raised below and should be excluded from consideration on appeal. R. 2:5-4. Among other claims, defendants have alleged negligent supervision and hiring. "It is, of course, clear that in their review the appellate courts will not consider evidentiary material which is not in the record below." Pressler, Current N.J. Court Rules, comment 1 on R. 2:5-4 (1995). But the issues here do not involve the receipt of evidence but rather the legal issue of coverage based upon all of the documentary proofs, including the pleadings before the trial judge. R. 4:46-2. Although many of the alleged nonsexual acts were not argued in the Law Division, the documents were before the court. Of course, the disputed facts about the paddling need to be litigated to determine if the claimed injuries were the probable result of an intention to assault S.R. sexually, and if it is not, whether there was a subjective intention to cause actual injuries. If, at trial, S.R. proves other matters that fall within the issues raised in the complaint, there may even be additional bases to establish coverage by plaintiffs.

II
Plaintiffs claim that the corporal punishment endorsement must be read in pari materia with the definition of "occurrence" in *468 the main part of the policy. Thus, the effects of the corporal punishment would have to be unintentional. Defendants claim that the endorsement governs and supersedes the occurrence language. Although the word "occurrence" is used in the endorsement itself, defendants assert that the use of the word "occurrence" is only relevant to the coverage limit.
As noted earlier, where there is an ambiguity, the interpretation of the policy will favor the insured. Voorhees v. Preferred Mut. Ins. Co., supra, 128 N.J. at 173-174, 607 A.2d 1255; Ruvolo v. American Casualty Co., 39 N.J. 490, 498, 189 A.2d 204 (1963); Caruso v. John Hancock Mut. Life Ins. Co., 136 N.J.L. 597, 598, 57 A.2d 359 (E. & A. 1948). But "only genuine ambiguities engage the so-called `doctrine of ambiguity'." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 246, 405 A.2d 788 (1979). "[T]he `doctrine of ambiguity' works to effectuate the consumer's expectation that the policy purchased extended greater coverage in the particular underwriting area." Id. at 247, 405 A.2d 788. As a corollary of this rule, exclusion clauses are construed against the insurer. Salem Group v. Oliver, 248 N.J. Super. 265, 271, 590 A.2d 1194 (App.Div. 1991), aff'd, 128 N.J. 1, 607 A.2d 138 (1992); Sinopoli v. North River Ins. Co., 244 N.J. Super. 245, 250, 581 A.2d 1368 (App.Div. 1990), certif. denied, 127 N.J. 325, 604 A.2d 600 (1991).
The corporal punishment endorsement reads as follows:
YOUR LIABILITY COVERAGE is extended to cover claims arising out of the use or alleged use of corporal punishment [by] teachers.
We will protect you against corporal punishment claims, subject to the applicable Section II coverage limit for "each occurrence." "Corporal punishment" means striking a student with a paddle, stick or hand or using any physical force against [a] student.
In Section II, Part VII, "Liability claims against you", the policy states:

Each Occurrence. The most we'll pay for all damage that results from bodily injury personal injury or property damage arising out of one occurrence is the "each occurrence" limit shown in the Declarations. The "each occurrence" limit applies no matter how many people [are] insured by this policy, how many people are harmed or how many people bring claims.
*469 There is some ambiguity whether the endorsement merely refers to the liability coverage limit being established for each corporal punishment event, or whether the acts covered by the corporal punishment endorsement must be subject to the definition of an "occurrence." Both uses of "occurrence" are probably incorporated in the endorsement, but even the latter does not limit the coverage for acts of corporal punishment. The "occurrence" cannot mean the mere striking of the student, since this would negate the rider. It must refer to some unexpected result of the striking. The administering of corporal punishment is here accepted as a covered cause of a potential injury. By the policy definition of corporal punishment, it is an intentional act; but it is a covered intentional act. To give meaning to the term "occurrence," we read it as limited to a resulting unintended harm from the intentional corporal punishment. In terms of this case, the question is whether Lynch intended harm beyond the usual caused by such punishment, not whether Lynch intended the paddlings. The trier of fact should determine whether Lynch's actions fell within the policy definition of corporal punishment, taking into account his subjective intent. While his analysis may have been different, the judge correctly interpreted the corporal punishment endorsement in relationship to the language of the main policy.[4]

III
The motion judge stated that even though there were different parties and "slightly different" facts in the previous orders granted by Judges Friend and Weinstein, the argument in the present motion was the same since it concerned the same policy coverage. He additionally recognized that summary judgment *470 was inappropriate when there were factual issues to be determined by a trier of fact.
Plaintiffs claim that "law of the case" does not apply to the previous summary judgments. In some situations during the pendency of a case, the "law of the case" doctrine requires that one court's decision of law be respected by lower or equal courts. State v. Reldan, 100 N.J. 187, 203, 495 A.2d 76 (1985). But, "[i]t should be applied flexibly to serve the interests of justice." Ibid. "Prior decisions on legal issues should be followed unless there is substantially different evidence at a subsequent trial, new controlling authority, or the prior decision was clearly erroneous." Sisler v. Gannett Co., 222 N.J. Super. 153, 159, 536 A.2d 299 (App.Div. 1987), certif. denied, 110 N.J. 304, 540 A.2d 1283 (1988).
The issues decided by Judges Friend and Weinstein may have been supported by different facts. This judge did not know, as far as can be discerned, what alleged facts were presented in the pleadings of the two other boys or what facts were still to be considered by a trier of fact. There may have been "substantially different evidence" in the case at hand from that in the other summary judgment motions. Those decisions may have been persuasive if factually similar, and the same legal issues may have applied. However, since the earlier motions were decided on the facts presented at that time and relevant to those respondents, there was no issue of law for the judge to follow. "Law of the case" did not strictly apply here. The judge, however, also determined that there were factual disputes to be decided in this particular case so that summary judgment was inappropriate regardless of the application of "law of the case." While he incorrectly based his decision in part on "law of the case," the result he reached was sound.

IV
Defendants state the unassailable premise that where there are issues of fact that require a determination by a trier of fact, summary judgment is inappropriate. R. 4:46-2; Judson v. Peoples *471 Bank & Trust Co. of Westfield, 17 N.J. 67, 74, 110 A.2d 24 (1954). Any doubts are viewed against the movant, and credibility of the facts are to be left for the trier of fact. Judson v. Peoples Bank & Trust Co. of Westfield, supra. Id. at 75, 110 A.2d 24.
The facts have yet to be determined whether the alleged incidents were of a sexual nature and were intended to injure beyond the normal sequelae of corporal punishment. If so, such a conclusion would deny Lynch and the Chartwell School coverage from the policy. As discussed supra, the one event that Lynch has admitted, that may appear to be sexual, has been disputed as such by Lynch who claimed it was not for sexual gratification. He claimed he was merely protecting S.R.'s genitals from injury while paddling the boy. Thus, accepting the facts most favorable to Lynch, the incident would be covered under the corporal punishment endorsement. The facts of each incident need to be explored and the credibility of the witnesses determined by a trier of fact. Summary judgment was correctly denied.
Affirmed.
NOTES
[1] By application of Lynch and Chartwell, on November 12, 1993, Cigna, the parent company of Atlantic Employers Insurance Company and Insurance Company of North America, was made a direct third party defendant in the tort action. (The three companies will collectively be referred to as plaintiffs or the insurers).
[2] Two other cases reached the same issues. On November 8, 1991, Judge Friend, in the case of F., required Atlantic to provide Lynch with a defense but denied without prejudice the summary judgment motion to negate insurance coverage. On April 8, 1993, Judge Weinstein denied a similar motion in the case of S. for the same reasons.
[3] Emphasized terms are those defined in the policy.
[4] At oral argument plaintiffs urged that the paddling was a "battery," and as such was an illegal act for which no coverage should be provided. Plaintiffs issued the corporal punishment rider and accepted premiums therefor. Absent a clear case of illegality, it should not be heard to avoid coverage. However, no one has raised N.J.S.A. 18A:6-1 which forbids corporal punishment in public or private schools, and which makes the legality of the corporal punishment rider questionable in a case where the issue is properly presented.