762 A.2d 1062

J.C. AS GUARDIAN AD LITEM FOR M.C., PLAINTIFF, v. N.B., DEFENDANT–THIRD PARTY PLAINTIFF, AND D.B., DEFENDANT–THIRD PARTY PLAINTIFF–APPELLANT, v. ALLSTATE INSURANCE COMPANY, THIRD PARTY DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued November 15, 2000—Decided December 18, 2000.

Before Judges COBURN, AXELRAD and BILDER.

*Kim A. Pascarella* argued the cause for appellant.

*Joan M. Schwab* argued the cause for respondent (*Saiber, Schlesinger, Satz & Goldstein,* attorneys; *David J. D'Aloia,* of counsel; *Ms. Schwab,* on the brief).

The opinion of the court was delivered by

COBURN, J.A.D.

This case involves a question of liability insurance coverage under a homeowner's policy. J.C. filed the underlying tort action against the insureds, D.B. and her husband N.B., alleging that N.B. had committed repeated acts of sexual abuse on her infant daughter M.C. The abuse occurred over a period of four years in the insureds' home. The complaint sought damages from N.B. for his intentional conduct and from D.B. for her negligence in failing to prevent or warn of the harm. In the third-party complaint, D.B. asserted that she was entitled to coverage under the policy issued by Allstate Insurance Company ("Allstate").

The Allstate homeowner's policy provided coverage for claims against the insureds for bodily injury arising from "accidental loss" and excluded coverage for bodily injury "which may reasonably be expected to result from the intentional or criminal acts of an **insured person** or which are in fact intended by an **insured person**." It also imposed "joint obligations" on the insureds, stating that the "acts ... of an **insured person** will be binding upon another person defined as an **insured person**."

The Law Division granted Allstate summary judgment. D.B. appeals, contending that she was wrongly denied coverage. She asserts that the policy is ambiguous and should be construed in her favor. Alternatively, she asserts that if the policy is clear, it should nonetheless be construed to provide coverage to meet her reasonable expectations and that the denial of coverage is against public policy. Since D.B.'s arguments are unsound, we affirm.

■ We consider first the provision extending coverage. This policy extended coverage to its insureds for claims of bodily injury arising out of "accidental loss" without defining that phrase. Although the failure to define "accident" may render a coverage provision ambiguous in some circumstances, *Property Cas. Co. of MCA v. Conway*, 147 *N.J.* 322, 326–30, 687 *A.*2d 729 (1997), there is no ambiguity in the context of this case.

In *Conway*, the Court was concerned with a question of insurance coverage with respect to the statutorily imposed vicarious liability of parents for their child's intentional damage to school property. *See N.J.S.A.* 18A:37–3. The policy provided coverage for an "occurrence," which it defined as an "accident" without defining the term accident; it excluded coverage for property damage "which is expected or intended by the insured," and it contained a clause entitled "Severability of Insurance" which stated, "[t]his insurance applies separately to each insured." 147 *N.J.* at 325, 687 *A.*2d 729. The Court, applying the principle that the words of an insurance policy should be given their ordinary and plain meaning, defined an accident as "an unintended or unexpected event." *Id.* at 327, 687 *A.*2d 729. Given that definition and the cited policy provisions, the Court determined that "[b]y failing to define 'accident' [the insurance company had] introduced ambiguity into the definition of 'occurrence.'" *Id.* at 326, 687 *A.*2d 729. The ambiguity arose because the policy "d[id] not state whether the determination that an event is unexpected or unintended should be from the perspective of all those covered under the policy or from that of only the named insured." *Id.* at 325, 687 *A.*2d 729. Consequently, the Court held that although

there was no coverage for the child because of the exclusion, there was coverage for the parents because from their perspective the incident was both unintended and unexpected. *Id.* at 326–30, 687 *A.*2d 729.

D.B.'s circumstance is entirely distinguishable from that of the parents in *Conway* whose liability was vicarious. The cause of action against her was defined by the Court in *J.S. v. R.T.H.*, 155 *N.J.* 330, 714 *A.*2d 924 (1998).

> [W]hen a spouse has actual knowledge or special reason to know of the likelihood of his or her spouse engaging in sexually abusive behavior against a particular person or persons, a spouse has a duty of care to take reasonable steps to prevent or warn of the harm. [A] breach of such duty constitutes a proximate cause of the resultant injury, the sexual abuse of the victim.
>
> [*Id.* at 352, 714 *A.*2d 924.]

Thus, D.B. would only be liable for her own tortious conduct if she knew that the intentional and illegal activity was ongoing, or she had special reason to know that it was likely to occur, and she unreasonably failed to prevent or warn of the harm. Although the bodily injury for which she was being sued may have been unintended from her perspective, in light of the definition of the tort it was not unexpected; consequently, it was not an accident from her perspective and it was outside the coverage extended by the policy. *See Allstate Ins. Co. v. Steele,* 74 *F.*3d 878, 880 (8th Cir.1996); *cf. Jessica M.F. v. Liberty Mut. Fire Ins. Co.,* 209 *Wis.*2d 42, 561 *N.W.*2d 787, 790–91 (App.1997).

■ We consider next the exclusion. The absence of coverage is fortified by the exclusion from coverage of bodily injury "which may reasonably be expected to result from intentional or criminal acts of <u>an</u> **insured person** or which are in fact intended by <u>an</u> **insured person.**" (Underlining added). D.B. contends this exclusion is ambiguous from her perspective. We disagree.

*Conway* concerned a policy exclusion that referred to property damage " 'expected or intended by *the* insured' " and provided that the " 'insurance applie[d] separately to each insured.' " 147 *N.J.* at 325, 687 *A.*2d 729 (emphasis added). Here, the exclusion speaks of an intentional or criminal act of "<u>an</u> **insured person.**"

(Underlining added.) N.B. was *"an"* insured person and he committed acts that were both intentional and criminal. Furthermore, the policy imposes "joint obligations" rather than providing separate coverage to each insured and expressly stated that the "acts ... of a person defined as an **insured person** will be binding upon another person defined as an **insured person**."

In *Rena, Inc. v. Brien,* 310 *N.J.Super.* 304, 708 *A.*2d 747 (App.Div.1998), the policy insured the tenants and landlord of a building against fire loss. The tenants arranged for the building to be burned so that they could obtain the insurance proceeds. In considering the innocent landlord's claim under the policy, the court addressed the differing effect of exclusions that refer to acts of "the insured" and those that refer to acts of "an insured." The court denied coverage to the innocent insured, finding no ambiguity in an insurance policy that excluded coverage for damage resulting from " 'any fraudulent, dishonest or criminal act done by or at the instigation of any insured....' " *Id.* at 309, 708 *A.*2d 747. As reflected in the opinion, which thoroughly canvasses the relevant cases throughout the United States and the insurance texts, the phrases "any insured" and "an insured," in coverage exclusions have been interpreted almost uniformly, absent contrary statutory authority, as requiring the denial of policy benefits to innocent insureds. *Id.* at 321–25, 708 *A.*2d 747. If an unambiguous policy exclusion is enforceable against an innocent party, *a fortiori* it must be enforceable against an insured whose liability, as here, depends on fault. *Cf. id.* at 325, 708 *A.*2d 747.

In *Jessica M.F.,* the court considered the liability of a spouse in D.B.'s position under two homeowner's policies. One policy excluded coverage for bodily injury " 'which is expected or intended by the insured,' or 'from the standpoint of the insured.' " The other policy excluded coverage for such injuries " 'expected or intended by an insured.' " Both policies provided that coverage " 'applies separately to each insured.' " 561 *N.W.*2d at 790, n. 7. The court had no difficulty in finding that neither policy provided coverage. *Id.* at 791–94. It also rejected the severability-of-

interest clause as a basis for coverage because the spouse was not innocent, 561 *N.W.*2d at 794, a ruling which accords with our Supreme Court's decision in *Conway.* *Cf. Howell v. Ohio Cas. Ins. Co.*, 130 *N.J.Super.* 350, 355, 327 *A.*2d 240 (App.Div.1974).

D.B. also argues that if the language of the policy clearly excludes coverage it should be ignored because it did not meet her reasonable expectations. In *Werner Indus., Inc. v. First State Ins. Co.*, 112 *N.J.* 30, 548 *A.*2d 188 (1988), the Court reiterated that the "fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties." *Id.* at 35, 548 *A.*2d 188. And the Court also said, "[a]t times, even an unambiguous [insurance] contract has been interpreted contrary to its plain meaning so as to fulfill the reasonable expectations of the insured[.]" *Id.* at 35–36, 548 *A.*2d 188. In *Jessica M.F.*, the court rejected the reasonable expectations argument for two reasons: "one who purchases homeowner insurance does not contemplate coverage for sexual misconduct committed by one's [spouse]; and ... one who purchases homeowner insurance would not want to share that type of risk, (and the increased premiums that would result,) with other homeowner's policyholders." 561 *N.W.*2d at 794. *Accord Allstate Ins. Co. v. Steele*, 74 *F.*3d at 881.

D.B.'s last argument is that the exclusion is contrary to public policy and therefore should not be enforced. Since the propriety of exclusions for intentional and criminal acts have been consistently sustained as according with public policy, *see, e.g., Princeton Ins. Co. v. Chunmuang*, 151 *N.J.* 80, 95–97, 698 *A.*2d 9, (1997) and applied to other insureds when language similar to this policy's exclusion has been employed, *see, e.g., Rena*, 310 *N.J.Super.* at 321–25, 708 *A.*2d 747, we perceive no basis for D.B.'s argument that a denial of coverage to her violates public policy.

Relying on *Conway*, D.B. also argues that the denial of coverage is against public policy because it decreases the likelihood that the victim will receive compensation. But in *Conway*, the Court only found that affording insurance protection to the parents of a child who damaged school property would not violate public policy. 147

*N.J.* at 329–30, 687 *A.*2d 729. It did not hold that a clear exclusion of such coverage would be impermissible.

In *Ambassador Ins. Co. v. Montes,* 76 *N.J.* 477, 388 *A.*2d 603 (1978), the Court considered a claim on behalf of a person who was inadvertently killed in an arson fire set by the insured. Ambassador conceded that the policy's clause extending coverage applied and that the policy contained no exclusion for intentional acts by the insured. Nonetheless, it argued that the Court should deny coverage because "public policy prohibits insurance indemnity for the civil consequences of an insured's intentional wrongdoing." *Id.* at 482, 388 *A.*2d 603. The Court rejected Ambassador's position because that principle "should not come into play when the wrongdoer is not benefitted and an innocent third person receives the protection afforded by the insurance." *Id.* at 483, 388 *A.*2d 603. The Court considered that the wrongdoer would not benefit because the insurance company could seek reimbursement from him. *Id.* at 484–86, 388 *A.*2d 603.

D.B.'s situation is entirely distinguishable. She is not the victim; she is the insured and a wrongdoer. Moreover, unlike the situation in *Ambassador,* here the policy excludes coverage for intentional and criminal acts committed by any insured, and there is nothing in *Ambassador* that casts doubt on the right of an insurance company to exclude all coverage for such acts.

Furthermore, judicial insistence on insurance coverage for D.B's tort would be inconsistent with the policies reflected in the Court's opinion in *J.S.* The Court recognized that the imposition of liability on a spouse in D.B.'s circumstance would tend to interfere with marital privacy and the insureds' interest in a stable marital relationship, *id.* at 345, 714 *A.*2d 924, but, the Court determined that protecting children from sexual abuse was more important. *Id.* at 346, 714 *A.*2d 924. Without insurance coverage, a spouse whose husband or wife is a child abuser is more likely to carry out the duties imposed by *J.S.* promptly. Insurance would provide such a spouse with an undue incentive to value the stability and

privacy of the marriage over the well-being of the child-victim. *Jessica M.F.*, 561 *N.W.*2d at 795–96 (Shudson, Judge concurring).

Affirmed.