942 A.2d 804 (2008)
398 N.J. Super. 562
HIGH POINT INSURANCE COMPANY (formerly known as Prudential Property and Casualty Insurance Company of New Jersey), Plaintiff-Respondent,
v.
J.M. (a minor), K.M. (a minor) by their G/A/L G.M. and C.M., G.M. and C.M. Individually, and George Van Dyke, Defendants-Appellants, and
Sheryl Van Dyke, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued October 29, 2007.
Decided March 12, 2008.
*805 Stephen T. Sullivan, Jr., argued the cause for appellants (Keefe Bartels, attorneys; Mr. Sullivan and John E. Keefe, Jr., Shrewsbury, on the brief).
Frank Cofone, Jr., argued the cause for respondent (D'Amico & Cofone, attorneys; Mr. Cofone, New Brunswick, on the brief).
Before Judges STERN, C.S. FISHER and C.L. MINIMAN.
The opinion of the court was delivered by
STERN, P.J.A.D.
Plaintiff, High Point Insurance Company, commenced this action seeking a declaration that it was not obligated to provide a defense or indemnification under a homeowner's policy in a personal injury action filed against its insureds, Sheryl and George Van Dyke. Sheryl was charged with sexual abuse of a minor and her husband, George, was charged with not having prevented it.[1] In a memorandum decision, Judge Harriet Derman granted summary judgment to High Point as to both insureds. Defendants in the declaratory action, the victims, J.M. and K.M., their parents and George Van Dyke, appeal from the resulting judgment. They argue:
I. UNDER THE TERMS OF THE VAN DYKE POLICY, HIGH POINT WAS REQUIRED TO INDEMNIFY GEORGE VAN DYKE FOR HIS NON-INTENTIONAL MISCONDUCT.
A. THE TRIAL COURT FAILED TO FOLLOW CONTROLLING SUPREME COURT PRECEDENT *806 THAT APPLIES A SUBJECTIVE INTENT TO INJURE TEST TO DETERMINE COVERAGE.
B. THERE WAS NO EVIDENCE THAT GEORGE VAN DYKE HAD A SUBJECTIVE INTENT TO INJURE EITHER JM OR KM; CONSEQUENTLY, THE TRIAL COURT WRONGFULLY GRANTED HIGH POINT'S MOTION FOR SUMMARY JUDGMENT.
II. HIGH POINT WRONGFULLY REFUSED TO DEFEND OR INDEMNIFY SHERYL VAN DYKE FOR ANY OF THE CLAIMS MADE BY JM OR KM.
A. SHERYL VAN DYKE'S GUILTY PLEA DID NOT CONCLUSIVELY ESTABLISH AN INTENT TO INJURE EITHER JM OR KM.
B. HIGH POINT WAS REQUIRED TO DEFEND SHERYL VAN DYKE UNTIL THE TRIAL COURT BARRED HER FROM PRESENTING HER DURESS DEFENSE.

I.
The personal injury action, filed by the guardians for J.M. and K.M., alleged that Sheryl Van Dyke "physically, sexually and emotionally molested plaintiff J.M.," and that K.M., his younger sister, suffered "serious and permanent emotional and physical injury[,]" as a result of Sheryl's actions. The complaint also alleged that Sheryl's husband, George, "knew, or should have known of [Sheryl's] aberrant and deviant behavior, and . . . did nothing to prevent [it] or warn the appropriate people[.]"
Counts one and two of the amended complaint alleged negligence on the parts of the Van Dykes; count three alleged "intentional and/or negligent infliction of emotional distress"; count four alleged "assault, battery, sexual assault and battery"; count five alleged losses suffered by the parents as a result of the defendants' acts; and count six alleged willful, "wanton and reckless disregard for the safety and welfare" of the victims. George denied negligence on his part, and denied malice. George filed a cross-claim for contribution and indemnification, and alleged that Sheryl was negligent and her negligence caused the harm of which plaintiffs complained. Sheryl admitted to the relationship with J.M., but denied all other allegations of the complaint. Sheryl also alleged that the "relationship was initiated and forced by J.M. under threats of violence to defendant and her children."
The allegations against Sheryl and George stem from events that occurred between August 1999 and April 2000. On May 19, 2000, Sheryl was arrested for the sexual assault of J.M. and endangering the welfare of K.M. On December 19, 2003, she pled guilty to one count of second-degree sexual assault against J.M. and one count of endangering the welfare of J.M. and K.M. Sheryl was apparently sentenced to probation with time served and required to attend counseling.[2]
*807 The Van Dykes were insured under a homeowner's insurance policy issued by High Point. In response to the complaint filed by J.M. and K.M. and their parents, by letter dated January 27, 2003, High Point informed George that it would defend him under a "reservation of . . . rights" and would "retain an attorney to defend . . . against all claims asserted in the . . . complaint." High Point, however, retained the right to "deny coverage" or "withdraw" its representation if the "facts warrant[ed]." High Point also informed George that it was not "agreeing to indemnify" him or pay any judgment and would not provide coverage for punitive damages. In its letter dated January 26, 2004, High Point further informed George that "[s]hould discovery reveal either active or passive intentional action on your part, we reserve the right to deny coverage and withdraw from your defense." Sheryl's defense was declined by High Point and she obtained independent representation. The Van Dykes settled the case with J.M., K.M. and their parents, individually and as guardians, and this action was commenced to determine High Point's liability.
The policy provides coverage for liability. With respect to "personal liability," it provides:
If a claim is made or a suit is brought against an Insured for damages because of bodily injury, including personal injury, or property damage caused by an occurrence to which this coverage applies we will:
a. pay up to our limit for the damages for which the insured is legally liable; and
b. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit.
The term "bodily injury" is defined as "bodily harm, sickness, or disease, including required care, loss of services and death that results." The term "occurrence" is defined as "an accident, including exposure to conditions, which results during the policy period in bodily injury or . . . property damage." However, the policy contains an exclusion, and does not "apply to bodily injury or property damage: . . . which is expected or intended by the insured." The policy does not define what is meant by the words "expected or intended."
In her memorandum decision, Judge Harriet Derman granted summary judgment to the carrier, finding that the conduct of both Sheryl and George were not covered by the policy, and that the exclusion applied. As to Sheryl, the judge wrote:
The Policy provides coverage for personal injuries caused by "occurrences," but does not provide any coverage for the intended actions of the insured. Therefore the Policy does not provide coverage for the conduct of Sheryl Van Dyke because her actions were intentional and there is no protection for this kind of behavior under the Policy. Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Ctr., 239 N.J.Super. 276, [571 A.2d 300] (App. Div.) [certif. denied, 122 N.J. 147, [584 A.2d 218] (1990)] (sexual abuse of children was not covered by liability insurance). In Tots & Toddlers, personal injury lawsuits were filed against an insured day care center, alleging sexual *808 abuse by an employee of the center. The trial judge granted the insurance company's summary judgment motions and found no coverage. The Appellate Court affirmed as to the perpetrator defendant but remanded as to other defendants, holding that their supervision of the alleged perpetrator raised jury questions of negligence. Ibid.

Sheryl Van Dyke sexually molested a minor child. For public policy reasons an objective approach must be utilized when determining whether Sheryl Van Dyke's conduct was intentional because if a subjective approach is used it would be possible to sexually abuse a child and not cause an injury. Id. at 283 [571 A.2d 300]. The Appellate Division found that to be an "unacceptable conclusion." Ibid. There can be coverage for unintended consequences, but a child abuser, regardless of intent, is not going to be provided insurance coverage in the State of New Jersey. Ibid.

[Citations reformatted.]
As to George, Judge Derman found no coverage, reasoning as follows:
George Van Dyke argues that under the terms of the Policy High Point must indemnify him because his misconduct was non-intentional. He also argues that his behavior should be examined subjectively and because the Policy is ambiguous, he must be afforded coverage. In some circumstances, New Jersey Courts have applied a subjective test to determine whether conduct is excluded by an insurance policy. See Lyons v. Hartford Ins. Group, 125 N.J.Super. 239, 310 A.2d 485 (App.Div.1973), certif. denied, 64 N.J. 322, 315 A.2d 411 (1974), Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 607 A.2d 1255 (1992). These cases, however, are not child molestation cases and do not address the issue before this court.
. . . .
In J.C. v. N.B., 335 N.J.Super. 503, 762 A.2d 1062 (App.Div.2000), certif. denied, 168 N.J. 294, 773 A.2d 1157 (2001), appellant and her husband were defendants in a claim alleging that he had committed sexual abuse on an acquaintance's infant daughter and that appellant was negligent in failing to prevent or warn of the harm. In a third-party complaint, appellant argued that she was entitled to coverage under a homeowner policy issued by respondent insurer. The Appellate Division examined the exact issue before this Court, whether insurance policies are to be interpreted to provide liability coverage for the spouse of a molester, and granted summary judgment in favor of the insurer. The facts of J.C., as well as the facts before this Court, can be easily distinguished from [Tots & Toddlers], as that case involved workers in a school as opposed to a spouse of a child molester.[3] The J.C. court also found that the policy to protect children from sexual molestation was paramount to the policy of protecting marriages. In making this determination, the Court referenced the underlying policy that was the basis of the decision in J.S. v. R.T.H., 155 N.J. 330, 714 A.2d 924 (1998), which is to protect children by imposing a duty on a spouse to report suspected molestation by the other spouse regardless of any negative impact it may have on the marriage. The J.C. Court stated:
Judicial insistence on insurance coverage for D.B[.]'s tort would be inconsistent with the policies reflected in the *809 Court's opinion in J.S. The Court recognized that the imposition of liability on a spouse in D.B.'s circumstance would tend to interfere with marital privacy and the insureds' interest in a stable marital relationship, but the Court determined that protecting children from sexual abuse was more important. Without insurance coverage, a spouse whose husband or wife is a child abuser is more likely to carry out the duties imposed by J.S. promptly. Insurance would provide such a spouse with an undue incentive to value the stability and privacy of the marriage over the well-being of the child-victim. J.C., supra, 335 N.J.Super. at 509-510, 762 A.2d 1062.
Mr. Van Dyke may not have intended harm to the Plaintiff children; the nature of the invasion, however, prevents it from being denominated an accident.
. . . .
The public policy of the State of New Jersey is clear and it does not allow for insurance policies to be interpreted so as to provide liability coverage for spouses of sexual molesters. By allowing coverage, Lyons and Voorhees do not violate the public policy interest in protecting children; the torts in these cases do not involve sexual exploitation of children. [Tots & Toddlers] did not reject coverage, but it dealt with workplace supervision and surveillance issues of a commercial policy. Mr. Van Dyke can reasonably expect that if he maintains his household steps negligently, his homeowner policy will provide coverage; he cannot reasonably expect that if he failed to protect children exposed to his wife's sexual proclivities and he knew about it or should have known about it, he would have coverage. There is no ambiguity in the Policy. J.C., supra, 335 N.J.Super. at 505, [762 A.2d 1062].
[Citations reformatted.]
We agree and affirm the judgment substantially for the reasons expressed by Judge Derman. We add the following.

II.
Defendants argue the judge "wrongfully failed to follow long-standing and well-established New Jersey Supreme Court precedent that requires a trial court to apply a subjective test to an insured's intent to injure in determining whether coverage is available." They further assert that under "the proper test," summary judgment "would have been denied . . . because High Point did not present any testimony, certifications or documentary evidence that [George] Van Dyke had any intent to harm."
This policy defines "occurrence" as an "accident." It does not further define the term "accident."[4] The general rule for interpreting a policy to determine if an "occurrence" qualifies as an "accident" is that "[a]bsent exceptional circumstances that objectively establish the insured's intent to injure, we will look to the insured's subjective intent to determine intent to injure." Voorhees v. Preferred Mutual Ins. Co., 128 N.J. 165, 175, 607 A.2d 1255 (1992). If the insured did not "intend[ ] or expect[ ] to cause an injury[,] . . . the resulting injury is `accidental' even if the act that caused the injury was intentional." Id. at 183, 607 A.2d 1255. However, "[w]hen the actions are particularly reprehensible, the intent to injure can be presumed from the act without an inquiry *810 into the actor's subjective intent to injure. That objective approach focuses on the likelihood that an injury will result from an actor's behavior rather than on the wrongdoer's state of mind." Id. at 184, 607 A.2d 1255. Moreover, the Supreme Court has held that "when a spouse has actual knowledge or special reason to know of the likelihood of his or her spouse engaging in sexually abusive behavior against a particular person or persons, a spouse has a duty of care to take reasonable steps to prevent or warn of the harm. . . . [A] breach of such duty constitutes a proximate cause of the resultant injury, the sexual abuse of the victim." J.S. v. R.T.H., 155 N.J. 330, 352, 714 A.2d 924 (1998). Furthermore, as we said in J.C. v. N.B., allowing "[i]nsurance [coverage in child molestation cases] would provide [ ] a spouse with an undue incentive to value the stability and privacy of the marriage over the well-being of the child-victim." J.C. v. N.B., 335 N.J.Super. 503, 509-10, 762 A.2d 1062 (App.Div.2000), certif. denied, 168 N.J. 294, 773 A.2d 1157 (2001). And "one who purchases homeowner insurance does not contemplate coverage for sexual misconduct committed by one's [spouse]." Id. at 508, 762 A.2d 1062 (quoting Jessica M.F. v. Liberty Mut. Fire Ins. Co., 209 Wis.2d 42, 561 N.W.2d 787, 794 (Ct.App.1997)).
The Supreme Court in Voorhees, supra, stated that "the accidental nature of an occurrence is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury [and if] not, then the resulting injury is `accidental,' even if the act that caused the injury was intentional." 128 N.J. at 183, 607 A.2d 1255. However, the Voorhees Court also noted that "sexual assault of children is so inherently injurious that it can never be an accident." Id. at 185, 607 A.2d 1255. As the Court put it, "`[a]s a matter of public policy and logic the better rule warrants application of the objective approach,' according to which the intent to injure would be presumed from the performance of the act." Ibid. (quoting Atlantic Employers Ins. Co. v. Tots & Toddlers Pre-School Day Care Center, Inc., 239 N.J.Super. 276, 283, 571 A.2d 300) (App.Div.), certif. denied, 122 N.J. 147, 584 A.2d 218 (1990).[5] Accordingly, we adhere to J.C., and affirm the judgment as to George.[6]
Defendants argue that the language of the policy providing coverage for an injury caused by an "occurrence" distinguishes this case from J.C. The relevant language of the policy in J.C., supra, excluded coverage for occurrences "which may reasonably be expected to result from intentional or criminal acts of an insured person." 335 N.J.Super. at 506, 762 A.2d 1062 (emphasis added). We acknowledge that the policy in J.C. also provided that the "acts . . . of an insured person will be binding upon another person defined as an insured person," Id. at 504, 762 A.2d 1062, and that this language is not included in the Van Dykes' policy. Certainly *811 this language is significant. However, as Judge Derman noted, the language differences do not trump the public policy developed in J.C., premised on the holding of J.S., which established before the alleged acts occurred in this case, the existence of tort liability when one knows or has special reason to know of a spouse's molestation of a child.
The cases relied on by defendants, F.S. v. L.D., 362 N.J.Super. 161, 827 A.2d 335 (App.Div.2003); Atlantic Employers Ins. Co. v. Chartwell Manor School, 280 N.J.Super. 457, 655 A.2d 954 (App.Div.1995), do not deal with the special relationship between spouses addressed in J.S. or J.C. In the latter case involving a claim of abuse by a school and its headmaster, "[t]he insurance policy included an exclusion for intentional acts but provided coverage for corporal punishment under an endorsement." Chartwell Manor School, supra, 280 N.J.Super. at 460, 655 A.2d 954. In the former, the policy excluded coverage for a fiancé's infliction of emotional distress for having sex without advising her that he was HIV positive, but not for his adult children's failure to warn. F.S., supra, 362 N.J.Super. at 163-64, 827 A.2d 335. Moreover, as we noted above, Tots & Toddlers, which does involve a claim of negligent supervision by a spouse, was decided before the Supreme Court decided J.S.
The issue as to George is not without difficulty, particularly in the absence of any indication as to what George actually knew. Here, the allegations of the complaint do not assert a claim which would require a defense or indemnification, as opposed to excluded conduct. See F.S., supra, 362 N.J.Super. at 163, 827 A.2d 335; Danek v. Hommer, 28 N.J.Super. 68, 77, 100 A.2d 198 (App.Div.1953), aff'd o.b., 15 N.J. 573, 105 A.2d 677 (1954). Moreover, while the carrier did not develop what George observed or was told, we believe that the public policy addressed in J.C. does not warrant development of the facts, with the risk of raising issues relating to possible interference with either a Fifth Amendment, or marital or spousal privilege. The public policy involved, designed to have a spouse remain vigilant for the protection of a child victim, and the lack of "reasonable expectations" that the insurance provides such coverage for the spouse of an abuser, precludes coverage, at least without language far more inclusive than that involved here.[7]See J.C., supra, 335 N.J.Super. at 508-10, 762 A.2d 1062.

III.
Defendants argue that, despite Sheryl's guilty plea, High Point had a duty to defend and indemnify her because she did not have the subjective intent to cause harm to J.M. and K.M. as evidenced by her duress defense. She cites Prudential Prop. & Cas. Ins. Co. v. Kollar, 243 N.J.Super. 150, 155, 578 A.2d 1238 (App. Div.1990), for the proposition that her guilty plea is not preclusive. In the portion of the plea transcript which is in the record, defense counsel stated:
Judge, I should put on the record that your Honor will recall at trial of this matter, which was subsequently reversed, the defense of duress was asserted, pursuant to [N.J.S.A.] 2C:2-9. I reviewed with my client not only the Appellate Division decision, but also the ramifications of the initial jury verdict, and she waives her right to assert the defense of duress, and understands that *812 for purposes of this plea, and for this pleading, she is not asserting it.
So, I want to make sure the record was clear that non-assertion is limited for the purposes of this proceeding. But she also understands that without the defense of duress, the behavior is otherwise criminal and is prepared to plead guilty as charged.
The record also contains an order of June 26, 2006, in the underlying personal injury action, denying "plaintiffs' motion to bar any testimony or evidence regarding Sheryl Van Dyke's alleged duress in committing the wrongful acts against" J.M. and K.M.
The record reveals no factual basis for the defense of duress, but we have read the opinion in State v. Van Dyke, and will assume it could have been asserted, pursuant to the June 26, 2006, order in the underlying action, had it not been settled. However, there is no dispute that Sheryl pled guilty to both sexual assault and child endangerment. Given the elements of these crimes, it does not matter if coverage is evaluated under an objective or subjective standard. The plea reflects culpability and unlawful acts which, by their very nature and as a matter of law, cause some kind of injury to the victim.[8]See Tots & Toddlers, supra, 239 N.J.Super. at 283-84, 571 A.2d 300 ("[i]t is simply against public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing"); see also Voorhees, supra, 128 N.J. at 184-85, 607 A.2d 1255 (noting that the "objective approach" was justified in Tots & Toddlers).
Affirmed.
NOTES
[1] High Point defended George under a reservation of rights. After the underlying litigation was settled, this declaratory judgment action was filed.
[2] The record contains the plea form which recommended that she be sentenced as a "third degree offender" and receive concurrent sentences aggregating three years imprisonment. The "supplemental plea form for non-negotiated pleas" reflects that the judge indicated he would impose "non custodial probation with time served." See R. 3:9-3(c). The plea colloquy is not in the record, but pages of the proceedings are included. They refer to our reversal of the initial conviction and remand for new trial at which the duress defense could be asserted. See State v. Van Dyke, 361 N.J.Super. 403, 825 A.2d 1163 (App. Div.), certif. denied, 178 N.J. 35, 36, 834 A.2d 407 (2003). However, at the subsequent plea proceeding, defendant waived the duress defense.
[3] We note the spouse was a co-owner and sued for negligent supervision. Tots and Toddlers, supra, 239 N.J.Super. at 284, 571 A.2d 300.
[4] The record contains an addendum to the type of homeowner's policy involved which contains a definition of the word "accident," but the parties agree it was not in effect during the policy period involved or at the time of the "occurrence."
[5] While it precluded coverage for the sexual abuse of Robert Knighton, one of the owners of Tots & Toddlers Day Care Center, it concluded that the entity and Robert's wife, Nancy, its co-owner, "may indeed have a right to coverage, irrespective of Robert's intentional acts" unless "they participated in, condoned or had knowledge of the illegal activity." Tots & Toddlers, supra, 239 N.J.Super. at 284-85, 571 A.2d 300. Tots & Toddlers was decided in 1990, about eight years before J.S.
[6] Here, the term "occurrence" includes an "accident," but accident is not independently defined. We acknowledge that "occurrence" is similarly defined in Lyons v. Hartford Ins. Group, 125 N.J.Super. 239, 244, 310 A.2d 485 (App.Div. 1973), certif. denied, 64 N.J. 322, 315 A.2d 411 (1974). However, J.C. was decided after J.S. and involved a sexual assault.
[7] While a defense would not have to be provided to George, here it was provided under the reservation of rights, and if George had no knowledge of the wrongdoing, there would be no liability to indemnify. No judgment was entered requiring George to reimburse High Point for the cost of its defense.
[8] While the waiver of the duress defense was for purposes of the plea only, there is nothing in the plea form or the portion of the plea transcript before us which precludes use of the plea in this proceeding. See R. 3:9-2.