947 A.2d 1217

DANIELLE M. VILLA, PLAINTIFF, v. JOHN F. SHORT, JOHN DOES (1–10) AND ABC CORPORATION (1–10), DEFENDANTS AND THIRD–PARTY PLAINTIFFS, AND JOSEPH SHORT, INDIVIDUALLY AND AS EXECUTOR OF THE ESTATE OF ELSIE SHORT, DEFENDANT AND THIRD–PARTY PLAINTIFF–APPELLANT, v. ELIZABETH ANN MULDER, JANE DOES (1–10) AND ABC INSURANCE (1–10), THIRD–PARTY DEFENDANTS, AND ALLSTATE NEW JERSEY INSURANCE COMPANY, THIRD–PARTY DEFENDANT–RESPONDENT.

Argued January 7, 2008—Decided June 5, 2008.

*Susan L. Moreinis* argued the cause for appellant.

*David J. D'Aloia* argued the cause for respondent (*Saiber,* attorneys; *Kimberly A. Leegan* and *Agnes I. Rymer,* on the briefs).

Justice WALLACE, JR., delivered the opinion of the Court.

This case concerns whether a homeowner's insurance policy provides coverage to homeowners who are sued in connection with sexual assaults committed by their son. The precise question is whether the policy excludes coverage for all insureds if any insured under the policy commits an intentional or criminal act. The trial court concluded that the intentional-acts exclusion applied and granted summary judgment in favor of the insurer. The Appellate Division affirmed. We agree and hold that the policy language that excludes coverage for the "intentional or criminal acts of an insured person" operates to exclude coverage for all insureds under the policy, and not merely for the insured who committed the intentional or criminal act.

I.

Joseph and Elsie Short owned a home in Williamstown, New Jersey. They obtained homeowner's insurance with Allstate New Jersey Insurance Company (Allstate). The Shorts have two children, Elizabeth and John. Elizabeth married and on November 25, 1978, gave birth to Danielle Villa. John, who has lived with his parents at all times, was diagnosed as mildly mentally retarded when he was six years old. Because of his disability, John received special education services while in school and, afterward, vocational training in various household and janitorial tasks that

enabled him to get a job at a nursing home. John relied on his parents to help him with managing money and he had his own bedroom in their home.

In 1983, while on a family vacation in Ocean City, New Jersey, John sexually abused his niece, Danielle. At the time, John was twenty-one years old and Danielle was five. Thereafter, on various occasions between 1983 and 1988, John sexually assaulted Danielle at his parents' house in Williamstown. John warned Danielle not to tell anyone, but finally Danielle revealed the abuse to her mother in 1990. The family immediately confronted John, who admitted that he had molested Danielle. Joseph was aware that his son knew about sex, and he and his wife were present when John purchased sexually explicit magazines. Danielle claimed that John would show those magazines to her.

On November 23, 1998, just prior to her twentieth birthday, Danielle Villa filed a complaint in Superior Court, alleging that John sexually molested her between 1983 and 1988. She also sued her grandparents, Joseph and Elsie Short, for negligent supervision of John in failing to prevent the sexual assaults. Because Elsie Short had died in 1991, Danielle filed the complaint against Elsie's estate. For ease of presentation, our reference to Joseph is meant to include both Joseph Short and the Estate of Elsie Short.

Joseph sought to have Allstate defend against Danielle's complaint, but Allstate declined. Allstate claimed that based on the exclusions in the homeowner's policy for intentional or criminal acts, the policy did not provide coverage. Joseph retained his own attorney, filed an answer to Danielle's complaint, and filed a third-party complaint against Allstate seeking a declaratory judgment that coverage was available to satisfy the claims of Danielle and to pay his attorney's fees. Joseph also impleaded Danielle's mother, demanding contribution and indemnification.

There were two policy forms in effect during the relevant period: policy form AU429, which was in effect from June 1, 1983 to June 1, 1985; and form AU9601, which was in effect thereafter.

Under Part 1 of Section II, "Coverage X: Family Liability Protection," the earlier policy form, AU429, provided coverage as follows:

> We will pay all sums arising from the same loss which an insured person becomes legally obligated to pay as damages because of bodily injury or property damage covered by this part of the policy.

That same section of form AU429 excluded coverage as follows:

> We do not cover any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person.

In Part 5 of Section II, form AU429 further described the procedures the insured must follow in the event of a loss, and it also included in subpart 4, "Our Limits of Liability," what is sometimes referred to as a severability clause.

> This insurance applies separately to each insured person. Regardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one loss will not exceed the limit shown on the declarations page. All bodily injury and property damage resulting from one accident or from continuous or repeated exposure to the same general conditions is considered the result of one loss. Our total liability under the Guest Medical Protection coverage for all medical expense payable for bodily injury to any one person shall not exceed the "each person" limit shown on the declarations page. Our total liability for all medical expenses payable for bodily injury, regardless of the number of persons injured in one loss, shall not exceed the "each accident" limit shown on the declarations page.

The later policy form, AU9601, contained similar coverage and exclusion language. However, that policy form deleted the first sentence of the severability clause found in subpart 4 in Part 5 of Section II in form AU429. Further, in the section captioned "General," and unlike in form AU429, form AU9601 contained a "joint obligations" clause as follows:

> The terms of this policy impose joint obligations on the person named on the declarations page as the Insured and that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and failures to act of a person defined as **you** or **your** will be binding upon another person defined as **you** or **your**.

> The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

In August 2003, Allstate and Joseph filed cross-motions for summary judgment. Ultimately, the trial court found that the Allstate homeowner's policy did not afford coverage and dismissed Joseph's complaint against Allstate. Subsequently, Joseph moved to compel production of the Allstate policies and notices from 1970 through 1981. The trial court denied the motions. Thereafter, except for the coverage issue, all matters were settled. Joseph appealed the coverage issue.

In an unpublished opinion, the Appellate Division affirmed. The panel held that, because John was "an insured person" under the policy and the losses arose from his intentional or criminal acts, the policy denied coverage for all insureds, including him and his parents. The panel rejected Joseph's assertion that the policy was ambiguous because a reasonable person might read "an" insured to mean "each" insured, such that coverage would be denied only for the insured committing the intentional act. The panel concluded that such an interpretation would be a distortion of the plain words of the exclusion. Rather, the panel held that the policy clearly expressed the "exclusion from coverage of any claim against any insured arising from an intentional act committed by any insured." In addressing whether in light of John's mental disability his acts could be described as intentional, the panel cited *Ruvolo v. American Casualty Co.*, 39 *N.J.* 490, 497, 189 *A.*2d 204 (1963), to explain that in cases of sexual assault, intent is usually inferred unless the actor is "incapable of distinguishing between right and wrong, or of forming a rational intent to do the act." Because the record was devoid of any indication that John's disability made him less capable than anyone else of appreciating the nature of the molestation, the panel did not reach the question whether some other level of reduced mental capacity would render the exclusion ineffective. Additionally, the panel did not address the severability clause of the earlier policy form AU429, and it explained in a footnote that its analysis made it unnecessary to consider the joint obligations clause in the later policy form AU9601.

We granted Joseph's petition for certification. 191 *N.J.* 317, 923 *A.*2d 232 (2007).

## II.

■ Joseph argues that the decision of the Appellate Division conflicts with other appellate decisions, including this Court's decision in *Property Casualty Co. of MCA v. Conway*, 147 *N.J.* 322, 687 *A.*2d 729 (1997). In support of his contention that John's conduct should not bar insurance coverage for him, Joseph argues that the term "an insured person" is synonymous with "each insured person," and that the Appellate Division wrongly concluded that other jurisdictions have uniformly held that the word "an" in the context of an intentional-acts exclusion is not susceptible to any other meaning. Joseph contends that other jurisdictions have held that the terms "an insured" or "any insured" are ambiguous either alone or in combination with a severability clause. Further, Joseph argues that if there is coverage under the first policy, then because he was never notified of the significant reduction resulting from the addition of the joint obligations clause in the subsequent policy, that later provision should not apply to deny coverage.[1]

In contrast, Allstate argues that the judgment denying coverage is compelled by the unambiguous policy exclusion for intentional or criminal acts of an insured. Allstate further argues that the view that the severability clause in the earlier policy does not effect a clearly worded exclusion is consistent with prior case law, specifically *Argent v. Brady*, 386 *N.J.Super.* 343, 901 *A.*2d 419 (App.Div.2006). Additionally, Allstate notes that it abandoned any reliance on the joint obligations clause, included in the second

---

[1] Joseph argues in his supplemental brief that the exclusions are inapplicable in this case because John's acts could not have been intentional due to his mental incapacity. Allstate contends that Joseph did not raise that argument in his Petition for Certification and therefore this Court should not address it in this appeal. We agree with Allstate's contention and do not reach that issue. *See Proformance Ins. Co. v. Jones*, 185 *N.J.* 406, 414, 887 *A.*2d 146 (2005).

policy but not included in the earlier policy, and therefore the question of adequate notice is moot.

## III.

The issue before us is whether the intentional acts exclusion clause in the Allstate policy clearly and unambiguously excludes from coverage all insureds for the intentional act of "any" insured, or whether the clause is ambiguous and therefore requires an interpretation in favor of the insureds.

### A.

We first state the controlling principles. An insurance policy is a contract. However, the insurance company is the expert and unilaterally prepares the policy, whereas the insured "is a layman unversed in insurance provisions and practices." *Gibson v. Callaghan*, 158 *N.J.* 662, 669, 730 *A.*2d 1278 (1999) (quoting *Allen v. Metro. Life Ins. Co.*, 44 *N.J.* 294, 305, 208 *A.*2d 638 (1965)). Therefore, because of the vast differences in the bargaining positions between an insured and an insurance company in the drafting of an insurance policy, we pay special attention and apply special rules of interpretation to such contracts. *Ibid.*

In any event, we look to the plain language of the policy. "If the policy terms are clear, courts should interpret the policy as written and avoid writing a better insurance policy than the one purchased." *President v. Jenkins*, 180 *N.J.* 550, 562, 853 *A.*2d 247 (2004) (citing Gibson, supra, 158 *N.J.* at 670, 730 *A.*2d 1278). However, if the policy language is ambiguous, we construe the language to "comport with the reasonable expectations of the insured." *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001). That is, if the policy language "fairly supports two meanings, one that favors the insurer, and the other that favors the insured, the policy should be construed to sustain coverage." *President, supra*, 180 *N.J.* at 563, 853 *A.*2d 247 (citation omitted). "[I]nsurance policy exclusions must be narrow-

ly construed; the burden is on the insurer to bring the case within the exclusion." *Princeton Ins. Co. v. Chunmuang,* 151 *N.J.* 80, 95, 698 *A.*2d 9 (1997). On the other hand, "clauses that extend coverage are to be viewed broadly and liberally." *Gibson, supra,* 158 *N.J.* at 671, 730 *A.*2d 1278 (citations omitted).

## B.

■ With the above principles as our guide, we turn to the controlling language in the instant Allstate homeowner's policy. The exclusion clauses in both policy forms, the earlier AU429 and the later AU9601, bar coverage for "any bodily injury or property damage which may reasonably be expected to result from the intentional or criminal acts of an insured person or which is in fact intended by an insured person." The trial court and the Appellate Division read that language to bar coverage for all insureds whenever the losses stem from the intentional or criminal acts of any person insured under the policy. Therefore, because John was an insured person under the policy who committed an intentional sexual assault upon Danielle, the courts applied the exclusion to bar coverage for his parents.

Consistent with the interpretation of the Appellate Division in this case, two other recent Appellate Division decisions have held that "an insured" is synonymous with "any insured," and therefore the acts of one insured person are sufficient to disqualify other insured persons from coverage. *Argent, supra,* 386 *N.J.Super.* at 349–50, 901 *A.*2d 419; *J.C. v. N.B.,* 335 *N.J.Super.* 503, 506–09, 762 *A.*2d 1062 (App.Div.2000), *certif. denied,* 168 *N.J.* 294, 773 *A.*2d 1157 (2001).

In *J.C., supra,* a case with substantially similar facts to the present case, the wife sought coverage under her homeowner's policy to defend a claim of sexual abuse by her husband and negligence by her for failing to prevent the harm. 335 *N.J.Super.* at 504, 762 *A.*2d 1062. The homeowner's insurance policy contained an exclusion clause for "the intentional or criminal acts of an insured person." *Ibid.* The panel there rejected the wife's

contention that the exclusion was ambiguous and concluded that the use of the words "an insured person" excluded coverage because the husband was " 'an' insured person [who] committed acts that were both intentional and criminal." *Id.* at 506–07, 762 *A.*2d 1062. The panel mentioned that the policy contained an express provision that the "acts ... of a person defined as an insured person will be binding upon another person defined as an insured person," but it did not base its decision on that clause. *Id.* at 507, 762 *A.*2d 1062. Rather, the panel cited *Rena, Inc. v. Brien*, 310 *N.J.Super.* 304, 309, 321–25, 708 *A.*2d 747 (App.Div. 1998), in which the court canvassed the relevant case law and insurance texts to conclude that "the phrases 'any insured' and 'an insured[ ]' in coverage exclusions have been interpreted almost uniformly, absent contrary statutory authority, as requiring the denial of policy benefits to innocent insureds." *J.C., supra*, 335 *N.J.Super.* at 507, 762 *A.*2d 1062.

The other more recent case in which the Appellate Division considered whether the language "an insured" was ambiguous is *Argent.* In that case, the plaintiffs filed an action against the Bradys and their son, seeking damages as a result of the plaintiffs' infant child being bitten by a dog allegedly owned by the Bradys' son. *Argent, supra*, 386 *N.J.Super.* at 343, 901 *A.*2d 419. The Bradys, who operated a day care center, sought coverage under their homeowner's policy with New Jersey Manufacturers Insurance Company (NJM). *Ibid.* NJM denied coverage under the policy's business pursuits exclusion that excluded coverage for injury "[a]rising out of or in connection with a business engaged in by an insured." *Id.* at 348, 901 *A.*2d 419. There was no evidence that the son, who allegedly owned the dog, was engaged in the day care center business operated by his mother, Linda Brady. *Id.* at 347, 901 *A.*2d 419. The panel found no ambiguity in the phrase "an insured" and concluded that the policy "exclude[d] from coverage any liability resulting from the business pursuits of a covered person, regardless of whether the person sued was engaged in those business pursuits." *Id.* at 351, 901 *A.*2d 419.

We are in accord with the views expressed by the Appellate Division in *J.C.* and *Argent.* We agree that the phrase "an insured" in insurance policy exclusions is not ambiguous. In the present case, the policy language excludes all insureds from coverage for damages caused by the intentional or criminal acts of an insured. We will not search for ambiguities where there are none. *See, e.g., Allstate Ins. Co. v. Gilbert,* 852 *F.*2d 449, 454 (9th Cir.1988) ("We hold that by excluding insurance coverage for injury or damage intentionally caused by 'an insured person,' Allstate unambiguously excluded coverage for damages caused by the intentional wrongful act of any insured under the policies."); *Allstate Ins. Co. v. Stamp,* 134 *N.H.* 59, 588 *A.*2d 363, 365 (1991) (noting that "Allstate's use of the indefinite article 'an,' rather than the definite 'the,' before 'insured' is a clear reference to *any* insured who commits an intentional act resulting in damages, regardless of whether or not he is the particular insured seeking coverage"). *But see Brumley v. Lee,* 265 *Kan.* 810, 963 *P.*2d 1224, 1227 (1998) (holding that the words "an" and "any" in insurance policy exclusions "are inherently indefinite and ambiguous"). Nor do we find that because other words could be perceived as making the language in the exclusion clauses clearer, "the language that was chosen [is] ambiguous." *Argent, supra,* 386 *N.J.Super.* at 352, 901 *A.*2d 419.

We also agree with the view expressed by the Appellate Division here that the New Jersey cases cited by Joseph in support of his interpretation contain different policy language and therefore are not controlling. Those cases interpreted policy language referring to "the insured" and not "an insured." *See Prop. Cas. Co. of MCA, supra,* 147 *N.J.* at 325, 687 *A.*2d 729 (interpreting exclusion for bodily injury "expected or intended by *the* insured" (emphasis added)); *F.S. v. L.D.,* 362 *N.J.Super.* 161, 165, 827 *A.*2d 335 (App.Div.2003) (same); *Prudential Prop. Ins. v. Boylan,* 307 *N.J.Super.* 162, 168, 704 *A.*2d 597 (App.Div.), *certif. denied,* 154 *N.J.* 608, 713 *A.*2d 499 (1998) (same); *Atl. Employers v. Tots & Toddlers,* 239 *N.J.Super.* 276, 281, 571 *A.*2d 300 (App.Div.), *certif. denied,* 122 *N.J.* 147, 584 *A.*2d 218 (1990) (same). In sum,

Allstate's use of the words "an insured" eliminated the ambiguity that is inherent in the words "the insured." The policy exclusion for intentional or criminal acts of "an insured" is not ambiguous. Such language plainly excludes coverage for all insureds when any insured commits an intentional or criminal act.

## C.

Joseph also argues that even if the use of the words "an insured" in this context is clear, such use is rendered ambiguous when interpreted with the severability clause. Joseph states that the severability clause in the earlier policy form that provides that the policy "applies to each insured person" introduces an ambiguity into the policy, and therefore the intentional-acts exclusion should not be enforced against him. At first glance, Joseph's argument garners some attraction. However, when the entire severability provision is considered, we find no ambiguity.

The severability provision is in a different part of the policy than the coverage and exclusion provisions, both of which fall in Part 1 of Section II of the policy. The severability clause falls in Part 5 of Section II, which instructs the insured what should be done in the event of a loss. Subpart 4 of Part 5, titled "Our Limits of Liability," contains the severability clause and provides that the "insurance applies separately to each insured." Immediately after those words, however, the policy provides that

[r]egardless of the number of insured persons, injured persons, claims, claimants or policies involved, our total liability under the Family Liability Protection coverage for damages resulting from one loss will not exceed the limit shown on the declarations page. All bodily injury and property damage resulting from one accident or from continuous or repeated exposure to the same general conditions is considered the result of one loss. Our total liability under the Guest Medical Protection coverage for all medical expense payable for bodily injury to any one person shall not exceed the "each person" limit shown on the declarations page. Our total liability for all medical expenses payable for bodily injury, regardless of the number of persons injured in one loss, shall not exceed the "each accident" limit shown on the declarations page.

We view subpart 4 as merely informing the policy holder that all insureds under the policy are entitled to equal coverage up to the

total policy limit on the declaration page, rather than one insured receiving coverage and possibly leaving no insurance for the other insureds. Our Appellate Division adopted that same interpretation of a similar clause. *See Argent, supra,* 386 *N.J.Super.* at 355, 901 *A.*2d 419 (noting majority view that severability clauses are "designed solely to render the coverage actually provided by the insuring provisions of the policy applicable to all insureds equally, up to coverage limits"); *see also Nw. G.F. Mut. Ins. Co. v. Norgard,* 518 *N.W.*2d 179, 183 (N.D.1994) (noting "purpose of severability clauses is to spread protection, to the limits of coverage, among all of the ... insureds ... [and] not to negate bargained-for exclusions which are plainly worded"). *But see Worcester Mut. Ins. Co. v. Marnell,* 398 *Mass.* 240, 496 *N.E.*2d 158, 161 (1986).

In sum, we do not read the severability clause to infuse ambiguity into the plain language of the policy exclusion for the intentional or criminal acts of an insured. The severability provision merely makes the coverage available to each insured who is entitled to it up to the limits on the declarations page. The provision does not affect the unambiguous exclusion for intentional or criminal acts of an insured.

### III.

The judgment of the Appellate Division is affirmed.

Justice LONG, dissenting.

Joseph and Elsie Short purchased a homeowner's insurance policy from Allstate that contained an exclusion for the intentional acts of "an insured." Thereafter, their son John, who suffers from a mild mental disability and who was also insured under the policy, sexually abused his niece, the Shorts' minor granddaughter, Danielle. Danielle sued the Shorts and John. John was not covered by the policy because of the exclusion for intentional acts. However, the Shorts sought coverage from Allstate in connection with Danielle's claim that she was injured as a result of their

negligent supervision. Allstate disclaimed on the basis of the intentional acts exclusion although Danielle had only claimed that the Shorts were careless. Thus, the Shorts filed a declaratory action for coverage. They were unsuccessful in the trial court and in the Appellate Division. The majority now affirms on the ground that the intentional acts exclusion is clear and applies to the Shorts.

I cannot subscribe to that conclusion because the language of the policy does not unambiguously exclude from coverage the unintentional acts of the Shorts and because the Shorts' reading of the policy was an entirely reasonable one. Therefore, I respectfully dissent.

## I

The legal framework under which courts interpret insurance policy provisions is well-established. Exclusions are to be narrowly construed; the insurer has the burden of proving the applicability of the exclusion. *Carter–Wallace, Inc. v. Admiral Ins. Co.*, 154 *N.J.* 312, 329, 712 *A.*2d 1116 (1998); *Burd v. Sussex Mut. Ins. Co.*, 56 *N.J.* 383, 399, 267 *A.*2d 7 (1970). To glean the meaning of a particular provision, the plain language of the policy is the starting point. If that language is clear and unambiguous, the inquiry is concluded. *Progressive Cas. Ins. Co. v. Hurley*, 166 *N.J.* 260, 272–73, 765 *A.*2d 195 (2001). However, when a policy is unclear, ambiguities ordinarily are resolved in favor of the insured "even if a close reading of the written text reveals a contrary meaning." *Auto Lenders Acceptance Corp. v. Gentilini Ford, Inc.*, 181 *N.J.* 245, 269, 854 *A.*2d 378 (2004) (quoting *Zacarias v. Allstate Ins. Co.*, 168 *N.J.* 590, 595, 775 *A.*2d 1262 (2001)). "[B]ecause of the complexity of insurance contracts and the expertise of insurance companies, it is the obligation of those companies to draft clear and unambiguous contracts." *Meier v. N.J. Life Ins. Co.*, 101 *N.J.* 597, 622, 503 *A.*2d 862 (1986). Except where the language is clear and unambiguous, the insurance contract will be construed against the insurer under the doctrine of *contra proferentem*. *Pacifico v.*

*Pacifico*, 190 *N.J.* 258, 267, 920 *A.2d* 73 (2007) ("When a contract term is ambiguous, that rule of contract interpretation requires a court to adopt the meaning that is most favorable to the non-drafting party."); *see also* 5 *Corbin on Contracts* § 24.27 (Perillo ed., rev. ed. 1998).

Relevant to the insurer's obligation of clarity, we have explained that "when a court construes an ambiguous clause in an insurance policy, it should consider whether more precise language by the insurer, had such language been included in the policy, would have put the matter beyond reasonable question." *Auto Lenders, supra*, 181 *N.J.* at 270, 854 *A.2d* 378 (citations and quotations omitted). In addition, where a clause in an insurance contract is open to more than one interpretation, it is proper to choose the reading that "comport[s] with the reasonable expectations of the insured." *Zacarias, supra*, 168 *N.J.* at 595, 775 *A.2d* 1262. The present case involves an issue of pure interpretation to be resolved under those principles.

## II

When John committed his acts against Danielle, the Shorts were insured under a homeowner's policy reflected in two similar though not identical Allstate policy documents. The initial policy form, AU429, provided that:

> We will pay all sums arising from the same loss which an **insured person** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** covered by this part of the policy.

The policy also provided the following exclusion:

> We do not cover any **bodily injury** or **property damage** which may reasonably be expected to result from the intentional or criminal acts of an **insured person** or which is in fact intended by an **insured person**.

In reaching its conclusion that the exclusion clearly applies to the Shorts' negligent acts, the majority equates the words "an" and "any" in that clause and holds that it prevents recovery by "any" insured person if "any" other insured person commits an intentional act. In support, it cites two Appellate Division decisions that have adopted the same rather convoluted interpretation.

*Argent v. Brady*, 386 *N.J.Super.* 343, 901 *A.*2d 419 (App.Div.2006); *J.C. v. N.B.*, 335 *N.J.Super.* 503, 762 *A.*2d 1062 (App.Div.2000), *certif. denied*, 168 *N.J.* 294, 773 *A.*2d 1157 (2001).

Even if that is one reasonable interpretation of the exclusion, it is not the only one. *See, e.g., McFarland v. Utica Fire Ins. Co.*, 814 *F.Supp.* 518, 525–26 (S.D.Miss.1992), *aff'd*, 14 *F.*3d 55 (5th Cir.1994) (holding "an insured" and "any insured" can reasonably be interpreted as meaning different things so use of "an insured" is ambiguous); *Brumley v. Lee*, 265 *Kan.* 810, 963 *P.*2d 1224, 1227 (1998) (holding words like "an" and "any" in insurance policy "inherently indefinite and ambiguous").

Indeed the exclusion plainly admits of another equally reasonable interpretation: *that* coverage is excluded in respect of an insured only when that insured commits an intentional act. In other words, a negligent insured is not barred from coverage because of the intentional acts of a co-insured.

That interpretation of the exclusion is supported by the wording of the original severability-of-interest section:

> This insurance applies separately to each **insured person**. Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under the **Family Liability Protection** coverage for damages resulting from one loss will not exceed the limit shown on the declarations page. All **bodily injury** and **property damage** resulting from one accident or from continuous or repeated exposure to the same general conditions is considered the result of one loss. **Our** total liability under the **Guest Medical Protection** coverage for all medical expense payable for bodily injury to any one person shall not exceed the "each person" limit shown on the declarations page. **Our** total liability for all medical expenses payable for **bodily injury,** regardless of the number of persons injured in one loss, shall not exceed the "each accident" limit shown on the declarations page.

That clause provides that each insured essentially has a separately determinable interest up to the coverage limits, and that the coverage limits are absolute regardless of the number of insureds. The first sentence literally supports the Shorts' claim that they were entitled to a coverage analysis separate from the one that addressed coverage for John.

With respect to that language, one commentator has specifically noted that although there are differences of opinion over whether negligent supervision claims fall within the intentional acts exclusion, "[u]nder a policy stating 'this insurance applies separately to each insured' or employing a like phrase, a claim for negligent supervision of the insured intentional tortfeasor is covered." 7A *Couch on Insurance* § 103:31 (3d ed. 2005); *see also Nw. Nat'l Ins. Co. v. Nemetz*, 135 *Wis.*2d 245, 400 *N.W.*2d 33, 37 (App.1986) (holding severability-of interest clause renders ambiguous exclusion for acts "expected or intended by *an* insured"); *Catholic Diocese of Dodge City v. Raymer*, 16 *Kan.App.*2d 488, 825 *P.*2d 1144, 1151, *aff'd*, 251 *Kan.* 689, 840 *P.*2d 456 (1992) (holding severability-of-interest clause makes ambiguous exclusion for injury caused "intentionally or at the direction of *an* insured") (emphasis added). I make those points not to suggest that they are dispositive as to meaning but only to conclude that the language is ambiguous and, reading the policy as a whole, the Shorts reasonably could have expected coverage for their own negligent acts.

Apparently Allstate felt the same way. Thus it removed the first sentence of the severability-of-interest clause in the later version of the policy (AU9601) and added the following language:

> The terms of this policy impose joint obligations on persons defined as an **insured person**. This means that the responsibilities, acts and failures to act of a person defined as an **insured person** will be binding upon another person defined as an **insured person**.

That language was obviously intended to address the ambiguity in this case. Thus, we know that there is precise language that the insurer could have used to put this matter to rest. Having failed to do so, the exclusion should be construed against Allstate.

In reaching a contrary conclusion, the majority engages in the kind of "close reading" that we have said we do not expect of insureds. *Auto Lenders, supra*, 181 *N.J.* at 269–70, 854 *A.*2d 378. Indeed, words are to be given their ordinary meaning in an insurance policy, and we do not require the insurance-buying public to be lexicographers or wordsmiths in order to understand

their coverage. It falls to the insurer to do that job. In this case, the insurer fell short.

Because the language of the intentional acts exclusion must be narrowly construed; because it is not clear and unambiguous; and because an ordinary person, unschooled in the minutiae of insurance law interpretation, could reasonably have concluded that coverage would exist in the absence of intentional wrongdoing, I respectfully dissent.

Justice HOENS joins in this opinion.

*For affirmance*—Chief Justice RABNER and Justices LaVECCHIA, WALLACE, and RIVERA–SOTO—4.

*For reversal*—Justices LONG and HOENS—2.